2026 IL App (1st) 252466-U

SECOND DIVISION
August 11, 2026

No. 1-25-2466

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF THADDEUS HARRELL, | ) | Appeal from |
| | ) | the Circuit Court |
| Petitioner-Appellee, | ) | of Cook County |
| | ) | |
| and | ) | 23D9028 |
| | ) | |
| CORNICHE HARRELL KNIGHTS, | ) | Honorable |
| | ) | Robert W. Johnson, |
| Respondent-Appellant. | ) | Judge Presiding |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order granting temporary relocation of the parties' minor child to Washington State with father is affirmed where mother failed to provide a complete record supporting her claims of error.

¶ 2    Respondent Corniche Harrell Knights, appeals the trial court's order allowing Petitioner Thaddeus Harrell to temporarily relocate the parties' minor child to Washington State. For the following reasons, we affirm.

¶ 3    The record shows that Thaddeus and Corniche were married on July 29, 2017. The parties have one daughter, S.H., who was born on January 14, 2023.

¶ 4 On November 17, 2023, Thaddeus filed a petition for dissolution of marriage. Corniche was served by a special process server on December 7, 2023. Thereafter, Thaddeus filed a motion for an "order of default" on March 22, 2024, and Corniche ultimately filed her appearance through counsel on April 22, 2024.

¶ 5 On April 26, 2024, Thaddeus filed a verified petition for allocation of parental responsibilities, temporary and permanent parenting time, and for other relief. Thaddeus alleged that on October 16, 2023, Corniche called the Berwyn Police Department and made false accusations of domestic violence against him. Thaddeus further stated that, due to those false accusations, Thaddeus had criminal charges filed against him, he was removed from the marital residence, and his employer terminated his employment. While Thaddeus was removed from the residence, Corniche left with S.H., and moved to a different residence in Wheaton, Illinois. Corniche later expressed to the "State's Attorney" that she no longer wished to pursue charges against Thaddeus. Thaddeus sought expungement of his arrest, which was granted on or about April 18, 2024. Thaddeus stated his belief that Corniche was attempting to use the false allegations against him to gain the "upper hand" in the court proceedings, and to "leave the criminal charges pending long enough for her to leave the marital residence with" S.H. Thaddeus alleged that Corniche had "continuously used the minor child as a pawn in an attempt to manipulate" Thaddeus, and that she was only allowing Thaddeus to see S.H. "under her terms and conditions." Thaddeus also alleged that Corniche previously allowed Thaddeus to care for S.H. while she was working, but Corniche recently quit her job, and she had since been making it "nearly impossible for [Thaddeus] to spend any time with his daughter."

¶ 6    On August 1, 2024, the parties entered an agreed allocation judgment, which among other things, provided for joint decision making, equal parenting time, and the right of first refusal if either party was unable to exercise their normal parenting time.

¶ 7    On August 28, 2024, Thaddeus filed a notice of intended relocation, stating that he had been recently cleared for employment in the U.S. Navy in Washington State, and that he intended to relocate on or about September 15, 2024.

¶ 8    On October 15, 2024, Thaddeus filed a petition for relocation of the minor child, asking permission for Thaddeus and S.H. to relocate to Washington. Thaddeus alleged that due to the false allegations of domestic violence made by Corniche, he lost his job as a partner at a Chicago law firm, and that extensive attempts to secure new employment as a lawyer in Illinois had been unsuccessful. Thaddeus stated that on or about August 23, 2024, he was "cleared and offered full time employment" as a lawyer for the United States Navy in Washington. Due to the "quick start date," Thaddeus was required to relocate to Washington on September 15, 2024. Thaddeus alleged that under the factors delineated in Section 609 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA), it was in S.H.'s best interest to relocate with Thaddeus to Washington. Thaddeus set out all of the factors and argued why they weighed in favor of allowing relocation. In particular, Thaddeus alleged that his new job gave him "the opportunity to provide a substantially better living situation and quality of life for the minor child with steady employment, that has great short term and long term benefits," while Corniche's employment situation was unstable and she was unable to provide S.H. with "long-term stability" in Illinois. Thaddeus also alleged that he "would encourage and foster a long term, loving relationship between" Corniche and S.H. Corniche, however, had "prove[n] that she will take the steps necessary to ruin or minimize" S.H.'s relationship with Thaddeus, and Thaddeus believed that if he were not allowed

3

to relocate with S.H., Corniche would "alienate the child from him." Thaddeus alleged that Corniche uses S.H. "as a pawn *** to 'negotiate' what she wants with" Thaddeus, and that she refuses to allow Thaddeus to "speak to his child or to see the minor child for days or weeks at a time." Thaddeus also alleged that none of the parties' extended family members lived in Illinois, and that many of those extended family members lived on the West Coast, closer to Washington.

¶ 9     In sum, Thaddeus alleged that S.H. would "be able to sustain a more fulfilling, healthy, happy and safe lifestyle" while residing with Thaddeus in Washington. Thaddeus stated that he would "continue to foster and encourage a loving and meaningful parent relationship between" Corniche and S.H., and expressed concern that Corniche would continue her attempts to "significantly impair" the relationship between S.H. and Thaddeus if S.H. remained in Illinois.

¶ 10    On December 9, 2024, the court entered an order appointing a guardian *ad litem* (GAL) regarding the issue of relocation.

¶ 11    Over the next several months, Thaddeus filed a number of petitions and amended petitions for rule to show cause, alleging, among other things, that Corniche was failing to permit him to exercise parenting time with S.H. pursuant to their allocation judgment. In particular, Thaddeus alleged that on one occasion, Cornice agreed to allow Thaddeus to exercise parenting time from the evening of Thursday, May 22, 2025, through the afternoon of Sunday May 25, 2025, as long as Corniche was permitted to bring S.H. to daycare on Friday. On Friday evening when Corniche was supposed to drop off S.H. with Thaddeus after daycare, she did not answer Thaddeus's phone call and text messages. In a later phone call, Corniche stated that she would not be dropping off S.H., and told Thaddeus to "contact the GAL." When Thaddeus contacted the GAL, he learned that when Corniche picked S.H. up on Friday morning, she brought S.H. to the pediatrician's office where she made an allegation of "child abuse" against Thaddeus. Thaddeus denied any claim of

"harm or wrongdoing," and alleged that Corniche was "purposefully interfer[ing] with the visitation and custodial rights of" Thaddeus. Thaddeus included the medical records from S.H.'s visit as an exhibit, which provided that Corniche reported "concerns with a bruise to [S.H.'s] R[ight] ear," which she noticed after "pick[ing] [S.H.] up from her father." Corniche told the medical provider that there was a "history of physical abuse to mom and S.H." by Thaddeus, and that his "custody rights were lost when he moved out of Chicago but she has allowed [S.H.] to see" Thaddeus when he is "in town." Corniche also told the medical provider that Thaddeus was "very upset" because at the court date on the previous day, the court had "declined" Thaddeus's request for "100% custody." [1]

¶ 12    On August 27, 2025, the court issued an order stating that Corniche "represented to the court that she filed a child support case in California."

¶ 13    On October 1, 2025, Thaddeus filed a motion for temporary parenting time, alleging that Corniche was restricting his parenting time, and that she had not responded to his requests to exercise parenting time in October, and around the Thanksgiving and Christmas holidays. Thaddeus also asserted that, "Upon information and belief, [Corniche] is planning to relocate to California, and has not disclosed same to the Court, provided proper notice to [Thaddeus], or filed a proper Petition to Relocate."

¶ 14    On October 2, 2025, Corniche filed an emergency motion to relocate, stating that she "want[ed] to relocate on or about October 10, 2025," to Los Angeles, California. Corniche alleged that she had been requesting that Thaddeus "accede to [her] relocation to California since March

---

[1] Based on the record before this court, it appears that Corniche has never responded to Thaddeus's petitions for rule to show cause, and those petitions remain outstanding.

this year, but he has never consented" and that the filing of the notice "will simply confirm all the planned arrangements between the parties for several months to move out of Illinois." Corniche further stated that she had been employed since June 2, 2025, by La-Z-Boy, Inc., and that she needed to move to Los Angeles for employment training. Corniche attached the May 7, 2025, offer letter to her petition, which indicated that she had been offered a position as a "Designer" at a La-Z-Bay store in Torrance, California.

¶ 15    Thaddeus objected to the emergency nature of the motion, and on October 7, 2025, the court entered an order finding the matter was not an emergency. In that order, the court specifically ordered that Corniche "shall not remove the child from the State of Illinois for any reason."

¶ 16    On October 12, 2025, Thaddeus moved for an independent mental and physical examination of Corniche pursuant to Illinois Supreme Court Rule 215. Thaddeus contended that Corniche had been withholding parenting time from him and had lied to the court several times. In particular, Thaddeus contended that the court had asked Corniche whether she was planning to move to California a few weeks before she filed her emergency petition to relocate. Corniche responded that she was not, but her petition for relocation suggested that she had received an offer in May for a job that required her to move to California. Thaddeus further claimed that Corniche made various false allegations against him, including allegations of child abuse and that he went to her places of employment. Thaddeus asserted that Corniche appeared to be "delusional and paranoid," and that prior counselors had suggested that she receive mental health treatment.

¶ 17    The court apparently held a hearing on October 28, 2025, although a transcript or acceptable substitute does not appear in the record on appeal. Thereafter, on October 30, 2025, the court entered a written order finding it to "be an Emergency that [Corniche] has refused [Thaddeus] parenting time and is continuing to refuse [Thaddeus] parenting time over the Thanksgiving

6

Holiday from November 26, 2025, to November 30, 2025." The court granted Thaddeus leave to file "the appropriate emergency motion," and set the matter for emergency hearing on November 7, 2025. The court "admonished [Corniche] that the child is not to leave the State of Illinois, per the October 7, 2025, order for any reason and that this order controls over any previous order or the Allocation Judgment until further order of the Court."

¶ 18     On November 4, 2025, Thaddeus filed a combined "Verified Emergency Motion for Parenting Time *** and For Immediate Turnover of" S.H. to Thaddeus, and a petition for rule to show cause. According to Thaddeus, during court on October 28, 2025, he advised the court that he had not seen S.H. since August 2025, due to Corniche "withholding the child from him, even after repeated attempts to resolve the issue of temporary time over email and text." Based on this "egregious withholding of the child from" Thaddeus, the court asked Corniche to consider Thaddeus's request of five days of parenting time over the Thanksgiving holiday, and if she did not agree, the court would consider ordering such parenting time, finding "this level of withholding to be an emergency." Counsel for Corniche conferred with her privately, and then informed the court that Corniche would only agree to two days over the Thanksgiving holiday because she had prior plans to take the child out of state. The court reminded Corniche that she was not allowed to take S.H. out of state per the October 7, 2025, order, and specifically admonished her, again, both in court and in the subsequent written order, that she was not permitted to do so.

¶ 19     Thaddeus further alleged that four days later, on November 3, 2025, he received an email thanking him for the purchase of a children's toy at a Walgreens in Sharonville, Ohio. Thaddeus was aware that Corniche's uncle lives in Sharonville, Ohio. Thaddeus attempted to facetime Corniche to talk to S.H. and Corniche denied the call but facetimed him back shortly thereafter. During Thaddeus's facetime with S.H., he observed S.H. using the same toy. Thaddeus alleged

that Corniche "[c]learly *** took the child out of state to Ohio, a contemptuous and willful direct violation" of the court's written orders of October 7 and 30, 2025. Thaddeus explained that, prior to learning that Corniche had removed S.H. from Illinois, he had been requesting that the court award him parenting time over the Thanksgiving and Christmas holidays, but

> "due to CORNICHE's continued refusal to allow THADDEUS parenting time on a regular basis, her flagrant refusal to follow court orders, as well as her spiraling mental state, THADDEUS is now asking the Court to order that the child is immediately turned over to his care and that he is awarded majority parenting time and sole decision making pursuant to 750 ILCS 5/602.5, 750 ILCS 5/602.7 and 750 ILCS 5/610.5, temporarily, and until this Court rules on his Petition to Relocate as well as the Petition for Dissolution of Marriage."

¶ 20    On November 6, 2026, Corniche responded to Thaddeus's motion. She alleged that she never restricted Thaddeus's parenting time, and that it was Thaddeus who "refused to coordinate with" Corniche to see S.H. She acknowledged that the court "specifically admonished" her that "she was not to take the child out of the state of Illinois and specifically ordered the same." Corniche also admitted that she took S.H. to Ohio, and that she purchased the toy for S.H. at a Walgreens in Sharonville, Ohio. She denied, however, that her uncle lives in Sharonville, Ohio, or that S.H. used the toy during her facetime with Thaddeus. Corniche alleged that she did not intend to relocate to Ohio, and that the trip to Ohio was "a trip of necessity." She asserted that she made a "day trip" to Ohio to "transport [her] mother's urn to her last surviving brother in Cincinnati, Ohio." She alleged that the trip was "unintentional and not made to avoid any court order."

¶ 21    On November 7, 2025, the court held a hearing, at which both parties were present along with their counsels and the GAL. No transcript of that hearing appears in the record on appeal.

8

Following the hearing, the court entered a written order which stated that the matter had come before the court on Thaddeus's Verified Emergency Motion for Parenting Time and for Immediate Turnover of the Minor Child to Thaddeus, and Thaddeus's Petition for Rule to Show Cause.

¶ 22    The court reiterated its finding that the matter was an emergency and further found that Corniche "took the minor child out of the State of Illinois after being ordered not to do so" in the court's written order of October 7, 2025, and in open court on October 28, 2025. The court also noted that it "question[ed] [Corniche] about the minor child's presence on the Zoom screen during these proceedings," and found that Corniche had allowed S.H. to be "present during some portion of these Zoom proceedings." The court ordered that Corniche turn over the minor child to Thaddeus at the marital residence, and that if any issue arose during the turnover, Thaddeus shall utilize the services of the Chicago Police Department (CPD) to facilitate and assist with the turnover. The court also appointed a family therapist and ordered that Corniche's parenting time shall be in the therapeutic setting of that therapist's office until further order of court.

¶ 23    On November 10, 2025, the court entered an order finding that S.H. had been turned over from Corniche to Thaddeus, and that the CPD had been called to assist.  The matter was continued to November 14, 2025, for "status, including but not limited to status of [Thaddeus]'s Temporary relocation with the minor child to the state of Washington."

¶ 24    Thereafter, on November 13, 2025, Corniche moved to substitute the attorney representing her.

¶ 25    On November 14, 2025, the court held a hearing. Thaddeus appeared through counsel and Corniche appeared through her new counsel. The court confirmed that the minor had been removed from Corniche's care and had been placed with Thaddeus.

9

¶ 26    Counsel for Corniche asserted that he had not been present at the previous hearing, he did not know what testimony was presented at that hearing, and he did not know if it had been transcribed. Counsel stated that the matter was only there for hearing on certain motions from Thaddeus, none of which were brought pursuant to statutory sections concerning removal.

¶ 27    The court then stated,

> "Well, let me stop you there, counsel. What set this in motion was [that] your client violated the Court's Order. And I understand you're referencing the motions that were before the Court on that day, but what set all this in motion was that the Court became aware, after being admonished not to remove the child, that between that court date and the last court date, she removed the child and, in the Court's opinion, tried to conceal that fact. So I think we would be missing the mark if we were just referring to the motions that were actually before the Court. The Court became aware of a situation on the last court date and the Court acted on that."

¶ 28    Counsel for Corniche acknowledged that "there was an Order prohibiting the temporary removal of the child from the state, and that there was an issue as to my client's noncompliance." Counsel further stated that the case had been "held over from this morning on a status based on [the GAL]'s recommendations." At the morning status hearing, the court had heard the GAL's "recommendations," although "we did not have the benefit of the court reporter." Counsel's understanding was that the GAL recommended that the court "order a temporary change in physical custody and temporary relocation." Counsel stated, however, that Corniche had not been charged with indirect criminal contempt, and even if she were, it would not be appropriate to order "a temporary change in physical custody and temporary relocation" on "a contempt issue."

¶ 29    Counsel for Corniche argued that

"As it relates to best interest standards, such a finding would necessitate that there be competent evidence regarding each of the factors under the standards set forth in 602. And again, I was not present, so I don't know what the testimony for that was. I am unaware of any specific findings that were made by the Court at the earlier hearing, and those findings would be required for a modification of custody or temporary removal. In the absence of those findings, such an Order could not be sustained."

¶ 30    Counsel for Thaddeus responded that he had asked for temporary removal in his pleading, and

"as it relates to the factors set forth in 603.5 which relates to the temporary removal or temporary Orders, it does specifically state that it needs to be in the best interest of the child, which I believe [the GAL] did specifically speak to and can certainly speak to further today if necessary, as he's had a chance to observe [Thaddeus] and the minor child, speak to [the court appointed therapist] about the concerns she has about mom, and that she believes that the father is the right person to have the child right now, based on her observations of [Corniche] and her concerns regarding her mental health and her ability to care for the child."

¶ 31    Counsel for Thaddeus also noted that the relocation statute provided factors to consider "related to the relocation" and counsel believed the GAL "did adequately explain those factors and go through those issues with the Court on the last court date, and further can do so today."

¶ 32    Counsel for Corniche replied:

"If counsel wanted to bring a motion pursuant to 603.5, she had every opportunity to do so, and did not. *** I would respectfully submit that there is no basis at this

juncture to either modify the custody of the Allocation Judgment or to grant temporary removal which is not a pending request before the Court."

¶ 33   The court responded:

"I think there is ample basis to order that, given what the Court discovered on the last court date. The Court cannot have a minor child in the custody of someone that has shown blatant disregard to Court Orders. I think it's in the best interest of the minor that the child remain with the father. And it is just the circumstances of this case. The father lives out of the state. *** [If] he lived here, this wouldn't be an issue. But unfortunately, he lives in a different state, and there would be no one else to care for this minor. The Court cannot have a minor in the care of someone who disregards the Court's Orders. So I'll allow the minor to go with the father back to *** Washington, temporarily. And I believe that's in the minor's best interests for [her] health and safety."

¶ 34   At the end of the hearing, the court and parties discussed the GAL's recommendation that Corniche's parenting time be supervised, and how to allow her to exercise that parenting time while S.H. was in Washington. Counsel for Thaddeus stated that Thaddeus had provided "daily Facetimes" and he was "willing to continue doing that." Counsel for Corniche argued that "Electronic communication is not parenting time." The court expressed concern that, "if she disregards my Orders, what would you want the Order to say for her not to disregard it, in another state of all places?" Counsel for Corniche responded that if she violates an order, "the Court has its contempt powers," but "we don't do this prospectively." The court responded:

"Well, when we are dealing with the health and safety of a child, you don't always get the opportunity to come back on a contempt issue. I admonished [Corniche] to

her face in front of me not to remove that child from the state and she did it days later and then tried to conceal it. I don't know what Order or what language I could write in an Order that I would feel safe with her unsupervised out-of-state with this child."

¶ 35 The GAL explained that he "would definitely like to see mom have parenting time with the child," and suggested that Corniche could have supervised parenting time in Washington "in a therapeutic environment." The GAL offered to research therapists in Washington who could "assist with this matter." Counsel for Thaddeus agreed, and counsel for Corniche objected, stating that the court was "going to enter an Order for supervised parenting time without a hearing on that, without making the requisite findings."

¶ 36 The GAL then asked, "Just to be clear, today is there a finding of serious endangerment and supervised parenting time? So the Order reads properly." Counsel for Corniche responded, "Well, we haven't had a hearing, *** so I don't know how the Court can make such a finding." Both the GAL and counsel for Thaddeus disagreed, explaining, "We did have a hearing. It's just whether or not it was memorialized properly in the previous Court order." The court agreed, ordering that the written order should include a finding that Corniche seriously endangered S.H., because the "facts" supporting that finding "were there" in the prior hearing.

¶ 37 Following the hearing, the court entered a written order finding that

"1. Based on the hearing on November 7, 2025[,] and [Corniche]'s behavior throughout the course of these proceedings, [Corniche] seriously endangered the child by blatantly disregarding this Court's orders after direct admonishments and her attempted concealment of her violations of the Court's Orders dated October 7, 2025[,] and October 28[,] 2025.

13

2. Based on the hearing on November 7, 2025[,] and [Corniche]'s behavior throughout the course of these proceedings, it is in the best interest of the minor child to remain in [Thaddeus]'s sole care and possession in the state of Washington.

3. At this time, the Court cannot allow the child to remain in the care of [Corniche] given her flagrant violations of the Court's orders in addition to her behavior during these proceedings."

¶ 38    The court granted Thaddeus possession of the minor child until further order of court and "temporary removal of the minor child to the state of Washington." The court granted Corniche "supervised visitation in a therapeutic setting" in Washington, and "remote parenting time via facetime calls on the Talking Parents Application at a time agreed upon by the parties." Corniche filed a timely petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(5), which this court granted on December 15, 2025.

¶ 39    In this appeal, Corniche contends that the trial court violated her "constitutional due process rights" by ordering S.H.'s relocation to Washington "without notice, without an evidentiary hearing, and without affording Corniche an opportunity to present evidence or cross-examine witnesses." Corniche also alleges that the trial court erred by ordering the "permanent" relocation of S.H. as a "contempt sanction," and "without conducting the mandatory analysis of the eleven factors set forth in Section 609.2(g)" of the IMDMA. She further contends that the trial court's relocation order "is against the manifest weight of the evidence and contrary to the best interests of the child."

¶ 40    As an initial matter, we note that the entirety of Corniche's arguments on appeal concern the trial court's decision to allow Thaddeus to relocate S.H. to Washington. Corniche makes passing references to the portions of the trial court's order as to custody and the requirement that

14

Corniche's parenting time be supervised, but she does not provide any argument as to why those decisions were incorrect, or cite any pertinent authority. Accordingly, she has forfeited any challenge to those portions of the trial court's order. *In re H.B.*, 2022 IL App (2d) 210404, ¶ 41 ("A party forfeits an argument when he or she fails to adequately develop it."); Ill. S. Ct. R. 341(h)(7) (an appellant's argument "shall contain contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on.").

¶ 41    We also conclude that Corniche's argument that the trial court's order violated her "fundamental due process" rights is forfeited as well. Corniche contends that she "did not receive notice" that the November 14, 2025, hearing would address relocation, because Thaddeus's motion "requested only that [S.H.] be turned over, not that she be relocated," and that she was "afforded no opportunity to present evidence, call witnesses, or cross-examine Thaddeus regarding" his proposed relocation. The only authority Corniche cites in support of this argument is a general citation to the fourteenth amendment to the U.S. Constitution, and one case referencing the liberty interests of parents in the care, custody, and control of their children. Because Corniche's argument is not supported by relevant authority, we would be entitled to find it forfeited. *In re H.B.*, 2022 IL App (2d) 210404, ¶ 41; Ill. S. Ct. R. 341(h)(7).

¶ 42    Forfeiture aside, the record shows that Corniche appeared, both personally and through counsel at the November 7, 2025, hearing, and she appeared through counsel at the November 14, 2025, hearing. Although she claims that she was unaware that relocation would be at issue at the November 14, 2025 hearing, the court specifically ordered that the matter was continued to that date for "status of [Thaddeus]'s Temporary relocation with the minor child to the state of Washington." Moreover, the matter was before the court on Thaddeus's emergency petition which requested the "Immediate Turnover of" S.H. to his care, and that he be awarded majority parenting

time and sole decision making over S.H. Considering Thaddeus was already living in Washington, it is difficult to imagine how the court could have turned S.H. over to his care without also providing for her relocation. As the court explained, "it is just the circumstances of this case. The father lives out of the state." Finally, and as we will discuss more fully below, we cannot credit Corniche's contention that she was prevented from "present[ing] evidence, call[ing] witnesses, or cross-examin[ing] Thaddeus regarding" relocation, when she has failed to provide this court with a transcript of the relevant hearing. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984) (appellant has the burden to provide the reviewing court with a sufficient record to support the claim of error). Accordingly, we find no due process violation in the circumstances here.

¶ 43    Corniche couches the remainder of her arguments in this appeal in terms of the legal requirements to impose contempt sanctions, and to grant a permanent relocation request. She contends that the court "failed to follow [the] required statutory procedures" for imposing a civil contempt sanction, and that "punish[ing]" her by relocating S.H. is an improper sanction for contempt. She also argues that, even if the relocation is "construed not as contempt but as a decision on Thaddeus's pending relocation petition," the decision was improper because the court did not make factual findings on the statutory factors regarding relocation pursuant to Section 609.2(g) of the IMDMA.

¶ 44    The record, however, negates Corniche's characterizations of the trial court orders. Although it is clear that the court believed that Corniche had "blatantly disregard[ed]" the court orders, and "attempted [to] conceal[ ] her violations," its decision to allow S.H.'s relocation was not made as a contempt sanction. And although Corniche repeatedly characterizes the court's relocation decision as "permanent," the trial court's orders clarify, in no uncertain terms, that it was ordering S.H.'s "temporary" relocation to Washington. In its November 10, 2025, written

order, the court continued the matter for status to November 14, 2025, regarding Thaddeus's "*Temporary* relocation with the minor child to the state of Washington." (Emphasis added). Then, in its November 14, 2025, written order, the court specifically ordered that it was granting Thaddeus "*temporary* removal of the minor child to the state of Washington." (Emphasis added).

¶ 45 Permanent relocation decisions are governed by Section 609.2, while temporary relocation decisions, are governed by Section 603.5 of the IMDMA. Section 603.5 provides that a court

> "may order the relocation of the child on a temporary basis before the entry of a final allocation judgment if it is in the best interests of the child. Any relocation shall be considered temporary in nature and shall not prejudice either parent in the allocation of parental responsibilities contained in a final allocation judgment." 750 ILCS 5/603.5 (West 2024).

¶ 46 Both temporary and permanent relocations orders are governed by the "best interests" standard, and the trial court "shall consider" a list of factors in rendering its decision. See 750 ILCS 5/603.5 (West 2024) ("Any relocation shall be made in accordance with the protocol set forth in subsections (c) through (g) of Section 609.2"; 750 ILCS 5/609.2(g) (West 2024) (setting out a list of factors that the court "shall consider" when reviewing a relocation request).

¶ 47 In ruling on a relocation petition, a trial court's "paramount consideration" is the best interests of the children. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32. A best interests determination "cannot be reduced to a simple bright-line test and the ruling must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." (Internal quotations and citation omitted). *Id*. A "trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." (Internal quotations and citation omitted).*Id*.

17

"Such deference is appropriate because the trier of fact had significant opportunity to observe both parents and the child and, thus, is able to assess and evaluate their temperaments, personalities, and capabilities." (Internal quotation marks and citation omitted.) *Id*. Accordingly, the "presumption in favor of the result reached by the trial court is always strong and compelling in this type of case." (Internal quotations and citation omitted). *Id.* A trial court's best-interests determination will not be reversed unless it is against the manifest weight of the evidence. *Id.*

¶ 48     "Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24. "A trial court's determination is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence." *Banister v. Partridge*, 2013 IL App (4th) 120916, ¶ 47.

¶ 49     In this appeal, Corniche generally contends that the evidence that was before the trial court regarding her trip to Ohio with S.H. was not sufficient to support its decision to order relocation because the court allegedly did not consider the statutory factors provided in Section 609.2. It is clear, however, that the evidence on which the trial court's decisions were based was heard on November 7, 2025, and Corniche has not provided the court with a transcript or acceptable substitute from that hearing. [2]

¶ 50     "It is a basic principle of appellate practice that a party who prosecutes an appeal has the

[2] The record also indicates that the parties were before the court in the morning of November 14, 2025, for "a status based on [the GAL]'s recommendations," and this court likewise lacks a transcript or acceptable substitute from that hearing.

duty of presenting to the court of review everything necessary to decide the issues on appeal."
*Moran v. Erickson*, 297 Ill. App. 3d 342, 359 (1998); see *Foutch*, 99 Ill. 2d at 391. The duty to provide this court with an adequate record is especially important in cases such as this, where this court is reviewing a trial court's decision for the manifest weight of the evidence. See *R.P. Acquisition Corp. v. Crabtree*, 2023 IL App (3d) 230019-U, ¶ 19 ("When the record does not contain all the evidence received by the trial court, we are unable to perform our function in a manifest-weight review: to review *all* the evidence and determine whether the opposite conclusion was clearly apparent." (emphasis in original)).  In other words,

> "Where the determination on appeal of whether a particular decision of the trial court constituted error depends on an examination of the evidence, and the record does not show or purport to show all pertinent evidence on which the decision is based, the reviewing court will presume that the evidence omitted supports the decision of the trial court." *W.E. Mundy Landscaping & Garden Center, Inc. v. Hish*, 187 Ill. App. 3d 164, 166 (1989).

¶ 51    In Corniche's appellate briefs, she attempts to explain why she took S.H. from Illinois, and minimize the significance of the trip. She acknowledges that the trip "technically violated the letter of the court's order prohibiting removal [of S.H.] from Illinois" but asserts that S.H. was not "actual danger." She contends that the "appropriate remedy for such a violation might be a warning, a clarification of the order, or perhaps a minor contempt sanction designed to ensure future compliance."

¶ 52    We note, however, that the matter was before the court on November 7, 2025, at which both the parties and their counsels were present. At that hearing, the court heard evidence regarding Corniche's violations of the court orders and her attempts to conceal those violations. Presumably,

Corniche raised the same justifications at that hearing that she raises in this appeal, and the court evaluated the evidence and made credibility assessments, before rejecting them. Without a complete record, this court will "presume[ ] that the order entered by the trial court [is] in conformity with the law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392.

¶ 53     Moreover, the record indicates that the trial court heard evidence at the November 7, 2025, hearing, not only on Corniche's violation of the court orders, but on a number of different issues. The court specifically noted that it questioned Corniche and found that she had allowed S.H. to be present during a portion of the Zoom proceedings. The record also suggests that the GAL provided specific recommendations regarding custody, relocation, and parenting time, based on the GAL's observations of Thaddeus and S.H., as well as concerns expressed by the court-appointed therapist regarding Corniche's "mental health and her ability to care for the child."

¶ 54     Additionally, the trial court's finding that it was in the best interests of S.H. to relocate to Washington with Thaddeus was explicitly based on the hearing of November 7, 2025, as well as Corniche's "behavior throughout the course of these proceedings." Because Corniche did not provide this court with a transcript of the November 7, 2025, hearing, we do not know what evidence the court was relying on when it referenced Corniche's "behavior." However, the record in this case includes a long history of allegations against Corniche, including that she made false claims of domestic violence and child abuse, interfered with Thaddeus's parenting time and his relationship with S.H., and lied to the court during prior proceedings.

¶ 55     Although the new attorney who began representing Corniche at the November 14, 2025, hearing[3] questioned the adequacy of the November 7, 2025, hearing, he acknowledged in open

---

[3] Corniche was represented in this appeal by the same attorney. That attorney withdrew after filing an appellant's brief, and Corniche's reply brief was filed *pro se*.

court that he did not know what happened at that hearing or what evidence or testimony was before the court. And while Corniche complains that the trial court's written orders do not specifically reference or analyze the Section 609.2(g) factors, there is no such requirement. "Although the trial court is required to consider and weigh all relevant factors when determining the best interest of the child, the court is not required to make an explicit finding or reference to each factor." *Alex C. v. Josee S.*, 2023 IL App (5th) 230202-U, ¶ 58; *Siegel v. Siegel*, 2021 IL App (5th) 210197-U, ¶ 67; *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43; *In re Marriage of Hefer*, 282 Ill. App. 3d 73, 79 (1996). Even where a court does not specifically mention the statutory factors, "generally, we presume that a circuit court knows the law and follows it accordingly." *Siegel*, 2021 IL App (5th) 210197-U, ¶ 67; *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 44 ("the lack of any explicit mention of the factors by the court *** is insufficient to overcome the presumption that the trial court knew and followed the law.").

¶ 56    Without a transcript from that hearing, this court will not assume that the court did not have sufficient evidence before it regarding the Section 609.2(g) factors, or that the court failed to consider them. On top of the presumption that the circuit court "knew and followed the law," (*id*.), the record here affirmatively suggests that the court did hear evidence and argument as to the best interest standard for temporary removal, as well the statutory factors regarding relocation at the November 7, 2025, hearing. As counsel for Thaddeus represented at the November 14, 2025, hearing, the GAL had "adequately explain[ed] those factors and [went] through those issues with the Court on the last court date." In these circumstances, we find no basis for concluding that the circuit court's decision was against the manifest weight of the evidence.

¶ 57    Finally, we also note that there is an alternate basis on which the trial court's temporary relocation order may be affirmed. Section 603.10 of the IMDMA provides that, "After a hearing,

if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." 750 ILCS 5/603.10 (West 2024). The section then states that such orders "may include, but are not limited to" a list of possible orders, including, among other things, "a reduction, elimination, or other adjustment of the parent's decision-making responsibilities or parenting time," "supervision," "restraining a parent's communication with or proximity to the other parent or the child" and "any other constraints or conditions that the court deems necessary to provide for the child's safety or welfare."

¶ 58    Inexplicably, Corniche reads the language of this section to provide an "explicit, exhaustive list of remedies a court may enforce upon a finding of serious endangerment," which she contends does not include relocation "as a form of 'parenting time restriction.' "

¶ 59    To the contrary, the plain language of Section 603.10 vests the court with broad authority to enter any type of order that it finds necessary under the circumstances. The section explicitly provides that the list of orders is not intended to be exhaustive, noting that the possible orders "may include, *but are not limited to*" (emphasis added), those specifically delineated. And if that language were not clear enough, the legislature also included a catchall provision, allowing a court to order "*any* other constraints or conditions that the court deems necessary to provide for the child's safety or welfare." (Emphasis added). Accordingly, the court was well within its authority under Section 603.10 to order temporary relocation of S.H. where it was necessary to "protect the child" and "provide for the child's safety or welfare."

¶ 60    Based on the evidence presented at the November 7, 2025, hearing, and on Corniche's "behavior throughout the course of these proceedings," the court found that Corniche "seriously

22

endangered" S.H., and that the court could not "allow the child to remain in" her care. Instead, the court ordered S.H. to remain in Thaddeus's "sole care and possession" in Washington on a temporary basis. As set forth above, due to Corniche's failure to provide this court with a complete record on appeal, we do not know the full extent of evidence that was before the trial court which supported the trial court's conclusion that Corniche seriously endangered S.H. In the absence of a complete record, we must presume the order entered by the trial court was in conformity with law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392.

¶ 61    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 62    Affirmed.